Good morning, Your Honors, Richard Antonini, on behalf of the appellant and debtor Alana Baroni, I'd like to reserve two minutes for rebuttal, if I may. Since we come here on a summary judgment appeal, I want to discuss something that I don't think was discussed enough in my briefs, and I apologize, and it's really disputed issues of fact. This case comes down to a question of who is a creditor. A creditor who submitted a claim in bankruptcy, swore under penalty of perjury that they owned the claim, had the power to enforce the claim. In this case, the claim was a first mortgage on a condominium. And the question is, you know, did it, you know, it had the burden of proof both as a creditor and as a party moving for summary judgment, so two burdens of proof. And so the question is whether it eliminated issues of fact on who owned the claim. And I'd like to point out a few things that are in the record and that were before the bankruptcy court. First, Ms. Barone had some questions herself about who was able to, you know, who owned her loan. And so she sent a letter to Bank of America sometime in early, I think in 2011, before July of 2011, asking that question, and she got back what is known in the debt collection trade as a debt validation notice from Bank of America. And this was attached as an exhibit, I believe, to the complaint and was, and she relied on it in opposing the motion for summary judgment by Willis Fargo. And it said, this debt validation notice, which is at page 164 of the record and also page 147, said the owner, the creditor, was an entity called Aurora MSF Lehman SARM 2005-17, which evidently is the name of a securitized trust. Now, the proof of claim filed in June 2012 says the creditor was an entity called the Structured Adjustable Rate Mortgage Loan Trust Pass-Through Certificates Series 2005-17, a different title, presumably a different entity. So that was before the bankruptcy court when it granted summary judgment. Another thing before the bankruptcy court when it granted summary judgment was a document called the MERS Milestone Report. MERS was the entity that acted as the nominee for the lender under the deed of trust, and according to the defendants, including Willis Fargo, had the power to assign a deed of trust on the promissory note. And the MERS Milestone Report says that the current creditor is Lehman Brothers Holdings, and this is at page 147, also page 166 of the record. So MERS ultimately assigned both, or purported to assign both the note and the deed of trust to Wells, and Wells, at least the bankruptcy court thought, that Wells had Barone's promissory note that was endorsed in blank, and so based on that, the court said that's enough. So the question seems to be, well, why isn't that enough? Because they acted differently. They took the position when they moved for summary judgment that mere possession of a note endorsed in blank was enough to establish their status as the creditor, the creditor making a claim in bankruptcy under penalty of perjury. But they acted- Why isn't that enough? Because they acted differently. Why does that make a difference? They had the note, which was the debt, and it was endorsed, and at least according to the other side, your client weighed the argument that it was not a negotiable instrument. So they had everything they needed. That's what the bankruptcy court thought. Because the evidence showed that there were other entities, they were presenting other entities as possible creditors, as possible owners of the note. And what was the harm that was caused by that, if any? The harm is that you have an entity here claiming to be a creditor. If they prevail, if they prevail, they will have a right to enforce the note. They will also have a right to collect all the money. No, no, no. My question may not be clear enough. You say that it was represented to your client that other entities owned the note and that the debt was owed to these other entities. But so far as I can tell, none of these other entities ever sought to enforce the debt. The only entity ever seeking to enforce the debt is Wells Fargo, and I think it's undisputed, who holds this note. I'm trying to figure out what, if any, harm there is from these representations that you say are critical. Well, the harm is that, you know, the harm is obviously that Wells Fargo obtained summary judgment. Wells Fargo had- That doesn't quite answer my question. Okay. We have someone, some entity, Wells Fargo, that claims to be the owner of the note. It's seeking to enforce the note. As far as I can tell, no one else, no other entity has sought to enforce the note. Is your client worried that somebody else is going to come out of the woodwork and seek to enforce the note all over again after she's paid it off this time to Wells Fargo? Yes. What's going on here? Yes. And who is it who's going to come, and why can't you say, well, we paid off to Wells Fargo if they do come? And they were the holder of the note under California law. That would protect your client. Well, the, you know, she is concerned there may be another entity out there. She is putting money aside in a court-supervised account to pay the eventual, you know, the creditors eventually prove to be the creditor. Now, if that money then goes to an entity that, you know, that is not the creditor, another creditor comes forward, you know, then she may have to pay twice. There is, you know, if this court upholds summary judgment in favor of Wells Fargo and says Wells Fargo is the creditor, then that doesn't have any preclusive effect against any other entity that is, you know, that is out there and that may make some kind of claim at some point in the future. And will they be able to bring in the very same note that Wells Fargo seems to have? I mean, there aren't two of them out there, are there? We don't know. Has she signed more than one note? No. To my knowledge, she signed only one note. Well, then, if Wells Fargo has the note which the attorney has put in a declaration, then there is only one note which Wells Fargo has. You could have someone come up, you know, for example, Nation Star come out with an assignment, which an assignment in July 2013 which assigned it the note and the deed of trust. They could come in and say, we have the right to enforce the note. Yes, it would have to sue Wells, right, because Wells actually is in possession of the note and Nation Star would be able to, if Nation Star had gotten the note from Wells, I guess it has a problem with Wells. But the very fact we're asking these questions indicates there is some uncertainty as to who, you know, who owns this note. Only maybe in your client's mind is there uncertainty because there's this sort of circuitous route that the note took, but it did wind up in Wells Fargo's hands. You don't dispute that, do you? Yes, we do. That it's in their hands, they're in possession of it? No, we don't dispute it's in possession. And is possession enough under the code? I don't think so when the party claiming to be the creditor acts as though more is required. Do you have authority for that in case? No, I would rely on the disputed issues, the fact that there were at least three different claimants to this note. And I think it's- Let me just, to clarify, I don't mean to interrupt too much, but if you accept that possession is enough under the code to assert the right of the document that you have in your hand, then have you relinquished your chain of title argument? We don't accept that possession is enough. Okay, so you better explain that. Because we argued in opposing summary judgment there were multiple creditors, multiple possible claimants, and possession is a, I think the case law in California and whether Article 3 of the UCC applies to foreclosures leans against finding that it applies to foreclosures. And more, I think the most important point is that, well, these entities involved as possible creditors in this case acted as though possession was not enough. For example, in July 2013, the proof of claim was transferred by court-filed document to NationStar, which means that under that transfer, NationStar would be the new creditor. Now, if Wells Fargo was a creditor all along, which is what they said in their June 2012 proof of claim, why was that transfer necessary? What does that indicate? An intent, I think, on the part of these various entities that NationStar become the new owner of a loan, the new creditor. Now, we've taken you actually slightly over time. Let's hear from the other side, and we'll give you a chance to respond. Thank you. Good morning, Your Honors. I was going to start here by pointing out that they admit that Wells Fargo is in possession of the original note that's endorsed in blank, but you've made that very clear here. So I'm not really sure. I mean, that's the beginning and end of it as far as I'm concerned. In their brief, which they discuss, which Mr. Antonini discussed a little bit, his contention was that California law somehow holds that a note is not negotiable when it's secured by real property. In response to that, we pointed out that that case, National Hardware, was overruled in 1934, despite his contrary claims when the California legislature amended the law to state that holding a mortgage secured by – sorry, a note secured by a mortgage is not in fact – is in fact negotiable, and in fact that that case sole proposition is whether a holder in due course applies to a note secured by a deed of trust or a mortgage. Then we pointed out that the UCC has carried that thing forward, at which point Mr. Antonini in his reply brief said, no, it didn't, which is either gumption or frivolous arguments. I'm not sure which. But the point is is that it's well established that whoever owns a note can enforce the note, even if they are a thief, if they are founded on the street, as long as it's endorsed in blank. You said whoever owns the note? You mean whoever possesses it? Whoever holds the note. I apologize, yes. Whoever – I have to be careful here. Whoever holds the note can enforce it because that is what – that is the beauty of the negotiable instrument, or even the non-negotiable instrument. The beauty and the curse. Yeah, exactly. You lose the note, you have problems, you have to do a lot of stuff to go to enforce it, but as long as you have it, we're good here. Can someone else, some other person in the chain of title claim that the note, that they're the true owner of the note and then seek to enforce it against Ms. Veroni? Not if they don't hold it. Under the UCC, the person who holds the note is the only person Ms. Veroni can and should pay, and if she pays them, the debt is discharged, regardless if somebody else pops out of the woodwork later saying you hold the note wrongfully, I have rights to it in any manner. So she is protected there. Had Wells done anything to enforce its interest against her prior to this bankruptcy? Well, I don't remember if a notice of default was recorded in this matter. They did assign the deed of trust, MERS assigned the deed of trust to Wells Fargo, which is generally the preliminary step that our clients take before initiating foreclosure proceedings in California. So are you moving through the steps? Yes. And, again, there may have been a notice of default recorded. A foreclosure was not. I mean, even a foreclosure may have been pending. I don't think it's particularly relevant here. We acknowledge that she filed for Chapter 11 bankruptcy. We are not challenging the terms of her plan and assert that as long as she makes her plan payments, then she will be able to keep her residence as such. We just filed a proof of claim, and that's it. So we are asserting rights in that we filed a proof of claim, but as the bankruptcy appellate panel put forward in Veal, which is decided to keep her residence. Is this her primary residence? This is an investment property, and I apologize. That is very clear. As long as it's a residence, all kinds of other things happen. Well, in this case, I don't think it matters, but it doesn't matter. But regardless, you are correct, and I misspoke. This is an investment property in Nevada. It is not, in fact, her residence. I did want to address one issue that was raised, the sort of proof of claim issue that they are conflating. As we set forth in our brief, a proof of claim has prima facie validity, so that kind of changes. It makes things a little bit weird in summary judgment. Essentially, once the court concludes that we have filed a proof of claim in accordance with bankruptcy rule 3002, which the court did or should have done. No, it did. Then the burden of proof is moved over to them to challenge it. So essentially all we have to prove on summary judgment in our initial burden is that we filed a proof of claim in accordance with rule 3002, and then the burden shifts to them to show that there was some error in the claim. Or alternatively, we can just prove the entire case outright. We did both in this matter. Sorry, but we proved the case outright. We can meet our burden in the event that the court found that a proof of claim was not filed in accordance with rule 3002. But they are, in their opening brief, or in their reply, sorry, and also in oral argument, they sort of implied that those burdens are different on summary judgment than in a proof of claim issue. They're not. The proof of claim issue controls who has the burden of proof, and that does affect how a summary judgment proceeding goes forward. So you would say that there's no reason for this court to address or resolve any broken chain of title argument? Well, I think that they're relevant to the proof of claim, so yes. The court could affirm in this matter by concluding that we had a valid proof of claim and all of the nonsense chain of title issues, at least as we view them, which, by the way, I do not think are supported at all by their brief. Some of this stuff was not, like about the MERS milestone report, I do not believe was raised in their opening brief. But even if it was, it's irrelevant. We could file a proof of claim, and if the proof of claim included a copy of the note, deed of trust, and that's basically it, then they would have the burden to show that we did not, in fact, have the note in our possession, and they admit we do. That's it. That's all that's required under California law. It's the beauty and the curse of the negotiable instrument, and we are the holder. Unless the court has any further questions, I'm happy to submit the remainder of my time. Okay, thank you. Thank you. Why don't we put, he left four minutes. Let's give the two of them to you. That's fine. First, a notice of default, which started the foreclosure process, was recorded on May 26, 2010, and that is actually pages 17 and 18 of my supplemental excerpts of record, and I apologize to the court for, how shall I put this eloquently, not putting together the excerpts of record right. I left out some things, so I had to file that at the same time, and the clerk told me you have to file it as a supplemental excerpt. That happens. It happens, yes. So the process has started. Now, will there be other claimants? Mr. Kornberg takes position that a finding that they're the creditor and upheld on appeal will bar any other claimants. That's not true. It will not bar a claimant from coming out there and saying, I have an assignment of the deed of trust, and therefore I can foreclose. An assignment of the deed of trust creates a lien on the property, and that passes through bankruptcy under the Blenheim case, so it's quite possible someone else, like NationStar, could come out there and maybe not try to collect money on the debt, but try to foreclose. So that's out there. And I might add, under California law and in the Ivanova case, we don't have the obligation to say, you know, to prove there will be other claimants or that other claimants will put Ms. Barone in essentially double jeopardy. They have the burden as the creditor to prove their claim. Now, Mr. Kornberg talked about the burden of proof and how the proof of claim somehow establishes, I don't know how it's called in evidentiary terms, perhaps an irrebuttable presumption. It's at best a rebuttable presumption, and all we have to do is present issues of fact that dispute their proof of claim. That we did. I outlined them earlier. Okay. Would you sum up? You're now over your two, so. Okay. Sorry. As to whether, you know, as to whether Article III of the UCC applies here and allows them to use this very simple approach to proving the ability to enforce a loan, there is no California case that says that. There is a California Supreme Court case not overruled explicitly by any other case that agrees with that, that says that. And the DeBrunner case, which is relatively recent, says Article III of the UCC does not apply to foreclosures. In this case, this home is a foreclosure. Last point is this was not an investment property. It was a second home, which Mr. Barone used when he traveled to Las Vegas. Okay. Thank you very much. Thank both sides for your arguments. Barone versus Wells Fargo submitted for decision.
judges: W. Fletcher, Ikuta, Barker